All right, the first matter on calendar is Rosalinda Villapudoa v. Kilolo Kijakazi, case number 20-15559. That matter has been submitted on the briefs and will be submitted as of this date. Next on the calendar is Joelle Ramirez Cervantes v. Merritt Garland, 20-70772. That's been submitted on the briefs and will be submitted as of this date. Next case is Benjamin Flores Saldana v. Merritt Garland, 20-71472. That's been submitted on the briefs and will be submitted as of this date. Then we have Jose Wilson Molina v. Merritt Garland, 20-72043. That's been submitted on the briefs and will be submitted as of this date. Next matter is Robert Platek v. Kilolo Kijakazi, 21-16296. That's been submitted on the briefs and will be submitted as of this date. Next matter is Samuel Love v. Barcelona Continental Corporation, 21-16503. That's been submitted on the briefs and will be submitted as of this date. The matter that's on for oral argument today is Leslie Merritt Jr. v. State of Arizona, 21-15833. And each side has been allotted 20 minutes for oral argument. So we would be ready to hear from the appellant if you would state your name and let me know whether you want to please the court. My name is David Abney. I'm here representing Leslie Merritt Jr. My understanding is that he is in the courtroom and maybe he could stand at this point and then sit down. He also should be there with one or more co-counsel. I do not see him, Mr. Merritt. The only people I see, I think, are law clerks. So if he comes in, maybe he's wandering around the courthouse. This is a bit of a maze. Let's go back to the 20 minutes on this. Okay, you can go ahead and proceed. Did you want to reserve any time for rebuttal? Yes, Your Honor. I'd like to reserve five minutes. All right. Thank you. The issue that really spans and ties everything else together is the fabrication issue. The district judge considered the evidence, weighed the evidence, decided credibility, and decided to take an inference that there was no fabrication. Instead, the district judge came up with two other inferences. One is that there possibly had been a mistake in the ballistics identification or possibly there had been some sort of negligence. He didn't identify what the mistake was or what the negligence was. Can I just ask a clarifying question about what we actually have in front of us? Do we just have before us the two causes of action that were tried to the jury and the subject of the verdict, namely the claim for false arrest and the claim for false imprisonment? Are there any other claims before us? Not at this time, Your Honor. No. Okay. But the problem then that I have is the fabrication ruling was made in the context of the summary judgment motion that was disposing of claims other than those two. So how have you preserved any similar objection with respect to the claims that are before us? Well, as the district court recognized in its own order, fabrication is really the essence of the problem here. If you don't have the fabrication, if you have fabrication, you do not have probable cause. If you don't have probable cause, you have false arrest, false imprisonment. So everything spins back to fabrication. So the summary judgment ruling that prevented fabrication from getting to the jury in any way whatsoever meant that you could not argue to the jury, could not present any evidence to the jury. You could not say to the jury that every defense witness has said is impeccable, never makes a mistake, 100% reliable. You have a crime lab where every defense witness says they don't make mistakes. They never have. They're exemplary. They're incredible. They're perfect. And yet you have a criminalist in a very important, high profile, high pressure case who doesn't even take the simplest step any criminalist would take as you photograph the evidence as you go along. That goes to the merits. And I understand your argument on the merits. I'm asking a preliminary question about the preservation of this issue because how it's teed up in the context of the two claims for trial is that a motion in limine was filed to exclude evidence of fabrication. And it doesn't appear to me that you objected to that motion. Am I misreading the record? No, not at all. And in a way, I applaud the counsel below for not doing anything. They didn't need to do anything. And there was no point in rejecting to the motion in limine. They're good professional lawyers. Once they had that summary judgment ruling from the district court saying fabrication is out of this case, period, they couldn't. They're being of the good lawyers they are. They could not even argue to the jury that it was fabrication. Is that what that ruling said? It seems to just say that fabrication, the evidence in the summary judgment record for that motion with respect to those other claims, malicious prosecution, et cetera, that evidence was insufficient. And so therefore, that claim was dismissed. Now you get to trial and you have different claims as a common issue. Is it an obligation to make any kind of an argument that, gee, I know you ruled that before, but you shouldn't apply it to this and here is why. And you didn't do that. No, Your Honor, there is no need to do that whatsoever. In the ruling, and it's ER-041, for instance, several times. What is your best case on that? Because when there's a motion in limine and you don't object, that's very problematic for your case. I mean, there's a lot of things here that you don't object to or after their discuss, you say that's fine. And it makes it very difficult for us, for you to have a right to adjudicate those issues in front of us. Objecting to the motion in limine was absolutely pointless because there was a pre-existing ruling on the motion for summary judgment concerning fabrication. Fabrication very clearly in the response to the motion for summary judgment was the basis for the false arrest. The basis for the false imprisonment claims was that evidence had been fabricated. The only reason- Hey, what claim were you going to trial on? What claims were you going to trial on? False arrest and false imprisonment. And the only reason Leslie Merritt was falsely arrested and falsely imprisoned was the ballistics evidence. Over and over, the state's witnesses said, if there had been no ballistic evidence, there was no probable cause, no basis to arrest. And because of that falsified ballistic evidence, there was probable cause until of course, three independent experts that the county hired and that the state hired. Let's assume, I'm not saying that I agree with your argument here, but let's assume that there was no waiver. What is the best evidence in the record that Mr. Kalkofsky fabricated evidence? What's your best evidence? Best evidence is he did not follow lab procedures, did not properly document his testing as he went through. He did not test all bullets and most damning of all, he didn't even photograph this supposed striation match that he concluded from which he concluded that all four bullets had been fired from one gun. Didn't even photograph it. I can't even imagine a competent criminalist not photographing the evidence. Okay, but fabrication is different than sloppy work. My understanding is that the best that you have is that it was inconclusive, not that it was wrong. Is that right? Do you have anything that says it was wrong or is it that it was inconclusive? In this context, the independent experts said they could not duplicate the results and they could not say that the bullets came from the one gun. Inconclusive in this context means wrong. You don't, you can't base a... No, they're not the same. Wrong and inconclusive are not the same. In this context, it is, Your Honor. If it's inconclusive for a ballistics, for a ballistics examiner, if you say inconclusive, it's not a match, period. Counsel, there are jurisdictions in the world, even including common law jurisdictions that have a third option for a jury, which is to conclude that you are factually innocent as opposed to not guilty. Not guilty is inconclusive. Factually innocent is something entirely different. You're arguing here that it was fabricated and that's very different from being sloppy and being inconclusive. Inconclusive leads you to a not guilty verdict as opposed to factually innocent. Let's look at this. Judge Callahan has asked you repeatedly, what's your best evidence of the motive? That is, that it was deliberately, willfully fabricated in order to finger your client. The process and the result are the best evidence of an inference of fabrication. The district judge seemed to believe he had to prove fabrication. You do not have to prove fabrication as a non-moving party in the motion for summary judgment. You simply have to say, we have this evidence. We've got photographs not taken that any criminalist on the planet would have taken. We've got a fair to follow testing procedures. We've got three independent experts hired by the government who all say, no, there's no match here. It's so inconclusive, we cannot say there's a match. We cannot even duplicate the testing that Kowalski did. Now, Judge Callahan may say, okay, there's no, what this is, this is sloppy work. Okay, maybe this is just bad sloppy work. That is an inference. The charge I'd say, well, it's negligence. That is an inference. The job judge may say, well, it's just a mistake of some kind, even though nobody can explain how the supposedly perfect criminalist in a supposedly perfect lab could ever make any kind of mistake. And yet the district judge is willing to say, well, there's an inference here. There might be an error inference here. There might be negligence. What about the inference that reasonable jurors could draw? The simplest, most, most direct inference is simply, it was falsified. That takes into account everything. It takes into account a previous reputation of supposed infallibility for a criminalist, previous reputation of supposed infallibility for a crime lab. Those are shot, by the way. Absolutely gone after three independent experts say, no, there's no match here. And then you've got this not taking photographs, which is absolutely damning. In a case of this importance, you've got a match, you go Eureka, and you take the pictures, you nail it down. In case the, in case, for some reason, the bullets get misplaced in the future, you've got it. It's nailed down there, right? There's pictures of what I just did. It could have done that. If the testing had been legitimate, a reasonable inference, that's all I'm asking for is a reasonable inference. Were the bullets lost? No. Which means that they could take the photograph at any time, right? You can take all the photographs you want. It doesn't match. Right, right, right. They don't match. The fact that he didn't photograph it at a particular time isn't evidence of corruption here. If they possess the bullets, you're saying you should photograph it in case the bullets get lost, but the bullets didn't get lost. Right. Which means that the police could have photographed this at any time. I'm just not sure what the failure to photograph at a particular time proves. Well, the failure to photograph at the particular time proves that he knew if he took the photographs, it wouldn't prove anything. And so he was hoping that the bullets would get lost? I don't know what he was hoping. I don't understand what the inference is. Well, the inference is if you think that you've got an absolutely perfect match, you'd photograph it. You'd put those photographs on the front page. You say, look how great a criminalist I am. I've got these photographs proving a perfect striation match. And he didn't do that because there was no perfect striation match, and he knew it. That's the reasonable inference you could take here. He knew it. Now, you could also take a reasonable inference that it was just some sort of error, or maybe there was some sort of negligence, some sort, some sort. But the most logical, the shortest, the simplest explanation Occam's razor at work is the explanation that takes into account everything, including fair to follow proper lab procedures, fair to document properly, and fair to take the photographs, is that he fabricated the evidence and hoped to get away with it. And he didn't, because three independent experts came in later. Thank God for Maricopa County and the state doing that. And experts they hired, which is the first time, you know, I've only been a lawyer since 1983, but this is the first time I have ever seen government experts not going the government's way. Now, with your experience, you've probably seen that before. I never have. They always testify the government's way. Three good question about harmless error. I mean, suppose we were to conclude that the issue was preserved, and that the inference should have been allowed to be argued to the jury. Is it? Why isn't it clear from the jury's verdict that the error was harmless, because the jury didn't even find negligence, much less intention. And doesn't it seems that the here the lesser includes the greater, so to speak, that if they didn't even find that he was sloppy enough for negligence, they certainly weren't going to accept an inference that he acted intentionally. Well, if suppose put ourselves in the place of the jurors, here they have government experts unanimously saying, Kalkowski's perfect, unanimously saying he could not have possibly made a mistake. They get to the jury room, they say to themselves, well, you know, Joe, it seems to me maybe there was some sort of fabrication here, but they never argued that. They never argued that. Therefore, there must not have been fabrication. Certainly, that would be careless and a violation of the standard of care to fabricate. I think fabrication goes beyond carelessness and certainly a violation of the standard of any care for any competent criminalist or for any competent crime lab. But it goes way beyond sloppiness and way beyond anything else. This is based upon the circumstances. Because your time's going down, I'd like to ask you about the notation of clearance issue. By failing to oppose to the motion in Lemony on notation of clearance and agreeing that the notation of clearance would not be mentioned, hasn't Mr. Merritt waived his notation of clearance argument? There was a later argument as the case moved toward its conclusion that the notation should be allowed. And I documented that in the opening brief and the later argument was denied. So I believe that that issue was preserved. It's a very interesting problem when you get right down to it. In Arizona now, Mr. Merritt can say the charges against me were wrongful. He can certainly say that based upon the notation of clearance, but the jury would never find out about that and all the defense witnesses. At the time, Judge Campbell ruled, wasn't the state's motion to intervene still pending? And he made a comment from the bench where he suggested that that was one of the reasons why he didn't want it to be discussed is that he didn't know whether it was going to be set aside. Speaking as an Arizona appellate lawyer who's handled over 450 appeals, I can tell you, when you've got a rule 54 C judgment in Arizona Court of Appeals, they're not going to overturn something like that on the basis. No, but if we have, if the issue is preserved, then we would apply abusive discretion. And so the question would become whether it was an abuse of discretion for Judge Campbell not to want it to go to the jury when he was unsure whether or not the state was proceeding. It's not clear to me that's an abuse of discretion if he had those facts right. It is an abuse of discretion because the rule 50, the period for appeal, cross appeal, everything had gone long, long ago. You stipulated to the jury instruction, and then you began to file, you filed a motion that would have challenged that and then withdrew it. So why isn't that just waiver? There was later, there was a later argument after that, before it all went to the jury about what to do. I believe that that allows us to get beyond the waiver doctrine, which is one of my least favorite doctrines as an appellate lawyer, but I think there's enough there to get beyond that. Further, if there's no further questions, I'll reserve my remaining time. All right. Thank you. Thank you, Your Honor. We'll hear from the state. Good morning. We can't hear you. You're muted. I wish you could say that was the first time that happened to me. Good morning. May it please the court, Jonathan Brinson, on behalf of defendants at the lease. The issues that are being addressed today, as the court has already indicated in some of the questioning, have all been waived at this time. What's the status of the effort to set aside the notation of clearance? That has been resolved. The motion to intervene was denied. Okay. But that was denied after the trial? Correct. At the time that the trial began. I'm sorry, go ahead and answer Judge Collins' question. I didn't mean to interrupt. Yeah, at the time the trial started, that was still pending, as the trial court just correctly noted. Counsel, under Arizona Revised Statute 13-4051, which is, I think, the notation of clearance statute, Section B says that an entry must be required that the person has been cleared on such records with accompanying justification, therefore. On the notation of clearance, was there an explanation? Your Honor, I wish I could answer that question. We were not privy to the documentation in that case. We tried to intervene so we could see what had happened there. And because it was granted, the notation of clearance, it's all been sealed, and we have not had access to any of those, the pleadings of the documents therein. Okay. So nothing was thought to be introduced by the plaintiff here, other than the fact of a notation of clearance? Correct. We don't have exactly why the court granted the notation of clearance. We do know before it got sealed, we do know that the grounds that were offered for the notation of clearance were grounds that the trial court here had specifically found there was no basis for in a summary judgment ruling. It was a couple of months after this summary judgment ruling and after the trial court judge here determined that there was not sufficient basis for those assertions, that plaintiff's counsel then went to this other court and made those same assertions. Our understanding is that those were never disputed. They were never fully tried in front of that judge in any way. That's why we wanted to intervene, so we could make that clear to the judge. Our understanding is that that never happened. But again, we don't have access to all the pleadings therein. And I ask a preliminary question about the claims similar to I asked your opposing counsel. There were two claims that were tried in this case, and those are the only ones before us? Correct. And they were both under 1983? No, there was a state law. I believe there were both state law claims. They're both state law claims. Okay. Correct. All right. So with respect to the fabrication, as the court noted, we did file an unopposed motion in limine. And that was necessary. That wasn't just a superfluous filing on behalf of the state. The court had in the summary judgment ruling determined that plaintiff had not met his burden of bringing forth sufficient evidence of fabrication in order to rebut the presumption that came with the grand jury indictment. So there's a different standard involved there. Now, with respect to the claims that remain going forward with trial, as counsel's arguing today, they wanted to argue an inference with respect to the evidence they had. Well, the court in ruling on our motion, the state's motion to exclude this evidence, the court actually modified our request, even though it was uncontested. The court in its order on the motion limine said, noted that the state had asked, but there'd not be any evidence presented or argument made with respect to fabrication. And the court modified that request in his order, granting the request and said that he would not allow an assertion of fabrication, leaving in that there could be evidence of fabrication. So there's nothing that's been argued by plaintiff that there's been any evidence that's been excluded as a result of these rulings. The only thing that they've argued on are you that their whole argument is they weren't allowed to take the facts that were in the record and argue to the jury that it should draw the inference that it was fabricated and that this analyst was beyond sloppy and was, you know, doing something more nefarious. Correct. And as you said, Judge Collins, they took the they they're arguing that they weren't allowed to take those facts and make that argument. What they're not arguing is that they weren't allowed to present those facts. They were allowed to prevent all the facts that they wanted. There was no, no exclusion of evidence as a result of the ruling as to the fabrication. Now, being able to argue that to the jury, again, fabrication wasn't a standard, isn't an element of any of the causes of action. They didn't have to prove that it's harder to prove fabrication than that someone was just sloppy. There's no indication that the jury would have reached any different result. And as a matter of fact, in the reply brief, plaintiff argues that they couldn't even contest this this testimony and evidence of this stellar crime lab. Well, that's what the whole trial was. They brought forth many witnesses. They had experts saying the trial lab did a terrible job, that Mr. Kalkowski did a terrible job. The state presented our witnesses that said the opposite. And it went to the jury. And with respect to them, not even during the reply brief, it said that they couldn't even make any kind of a, you know, even implicitly, well, that just didn't happen. There's throughout the opening argument, the opening statement, and in the closing statement, plaintiff made several arguments. In fact, the first line of the opening statement, after making the introduction and saying, may it please the court and introducing himself, counsel said, don't bear false witness. That was the first line. And then throughout, they talked about honesty. Throughout, they talked about telling the truth. And that happened in the closing statement as well. So, okay, excuse me. The criminalist, I guess, Mr. Kalkowski, that initially said it was a match, all right, in terms of the evidence at trial that the jury heard. The jury heard from other criminalists that said it was inconclusive. Did anyone say it was wrong, or did they say it was inconclusive? Nobody said it was wrong. In fact, the primary expert witness on behalf of plaintiff, Lucian Haag, testified in his deposition testimony, and it came out of trial, that he said he could not say that Kalkowski was wrong. He just said it was his opinion from what he viewed, that it was inconclusive. And with respect to the different categories that these experts reached, Mr. Haag actually testified differently than what counsel's arguing for plaintiff, that there are actually three categories, maybe there's even a fourth, but there's three categories for purposes of today, that you can either have an identification and inconclusive or a non-match. The non-match is where you say this was not the gun, and Mr. Haag testified he could not say that this was not the gun. All right, so that the jury also heard besides this, that he was the owner, that Mr. Merritt was the owner of the gun in question, is that correct? Correct. They heard that. And what did they hear about his tires? Weren't there bullets in the tires or something? Yes, in one of the tires of BMW, it was Mr. Hackbarth's tire, they heard evidence that Mr. Hackbarth arrived home from the airport, it was around 9 o'clock PM on August the 30th, when he got to his car, Mr. Hackbarth testified, he turned it on, and there was already an indicator light, an alarm light that came on for the left front tire, and it was just for the left front tire. And then he testified that as he proceeded to drive away, he started to lose air in that tire, and then at some point it started to lose air much more rapidly. The jury also heard testimony from Joe Grant, a tire expert with over 34 years of experience, that he had witnessed several instances, hundreds of instances where tires can retain air of the type at issue here. And the type of issue here was fairly unique because the bullet had ricocheted off the ground when it struck the tire, so it had flattened the bullet, and the bullet came in, the expert explained to the jury, it came in kind of like a frisbee, where it came in at an angle, it came in on a narrow end, and it came in at an angle that caused it to be a longer entrance. This was a run-flat tire, so the jury was shown pictures inside of that puncture of the tire, where there's a lot of rayon cords, a lot of things inside that tire that could have had that tire hold air. They also heard testimony from some of the DPS witnesses that they had previously had cases where a tire retained air that had been shot by a bullet because the bullet had gotten stuck in the tire. So, okay, so you have at least two motions in Lemony, the one that you talk about that had to do with the fabrication, but there was also a motion in Lemony about the notation of clearance issue, is that correct? Correct, so there was a motion that was filed. You heard counsel for Mr. Merritt state that yes, he did agree they weren't going to bring it up, but then later he changed his mind. What's your response to that? And therefore, that's how he retained that. That's why he didn't waive it. He did not retain it. Anything that he may have brought up later on was much too late. This began all the way back from the beginning with the notation of clearance. There was email correspondence that's in the record on appeal between counsel for the state and counsel for plaintiff, where counsel for the state said talk about what we were planning to do with that notation of clearance. And the response from plaintiff's counsel was, I'm not going to present that to the jury. All right, then you also have after that. When did he change his mind in the record? Was that after evidence was over or when was that? I actually, I'll wait to hear that from plaintiff's counsel. My understanding is that it never did change that we had the pre-trial conference, a pre-trial memorandum that was submitted by the parties again, said that there would be no notation of clearance reference to the jury. There was a motion filed by plaintiff with respect to the notation of clearance. The state responded. And in the state's response, we filed a counter motion with respect to the notation of clearance and have five separate grounds for why the notation of clearance should not be presented to the jury. The only reason that we withdrew that is because the parties reached agreement on the jury instructions. The judge said, I think this resolves and makes moot this counter motion. And the court specifically asked plaintiff's counsel, do you agree? And plaintiff's counsel said, yes, I agree with all of those waivers taking place with all those representations taking place, whatever they may have said. And I'm not familiar with what they they're saying that they said after the fact. At that point in time, there is no way all the prejudice that came from those representations to the state. And once the trial already started, you can't go back on that. Okay, thank you. On the other motion and lemonade and the preservation issue. Why isn't it sufficiently preserved by the fact that that motion eliminate said and the whole position of that motion eliminate was that the issue had been conclusively resolved at summary judgment. And obviously they preserved their objections there. So why isn't that sufficient? I think the motion limiting was a little more nuanced than that, your honor, in that it was, it wasn't saying that the, the order on summary judgment by itself had already precluded that evidence. The motion limit was based on because you made those holdings and those findings, you should also for the same reasons, hold that they can't present this evidence or make this argument on trial because of the same reasons. Now, I'm looking at the motion eliminate, and it says defendant moves to preclude plaintiff from arguing or introducing evidence that the DPS crime lab fabricated results, which the court has already found no reasonable juror could find. So your position was that this issue had been resolved and you just, it just needed to be enforced at the trial. So I don't see why he needs to like rerun the whole argument again at the motion eliminate when your grounds for the motion eliminate is that it was settled at the summary judgment ruling to which you did preserve his objections. Again, your honor, my, that language that we use was meant to convey. He already had considered that evidence had already reached that conclusion in the context of the summary judgment motion. And so for the same grounds, he should do so here, but as a, as a, as a matter of law, again, the summary judgment order was specifically on the, on the fabrication with respect to a different cause of action, the malicious prosecution. I'm looking at this motion. None of these nuances are in that motion. You presented this as this is done and decided, and you did not make these, you know, well, it was with respect to a particular claim. And now we have a different claim and you should transfer to, I don't see that in this document. It's quite short and it's not there. You're right. And your honor, again, our perspective was that we were saying it was already concluded as a matter of fact, not as a matter of law. And that's why we brought the because as a matter of law, we wanted those same factual findings of the judge to be applied with respect to the trial. And there is a distinction. There's a reason for that is because again, the standard and the burden on the summary judgment motion was different because the plaintiffs had the burden in order to rebut that grand jury indictment. They had the burden to show that enough facts and evidence that a reasonable jerk and food fabrication, it did not have that same when it came to this trial in order to make those those assertions to the jury. And so whether or not they would have been right or wrong on that, it was something that they needed to present to the judge. So the judge could decide that issue, which he had not decided at that point in time. Okay. Now, with respect to, you know, even if there was not a waiver, the trial court did get this right. The trial court did a painstaking job of going through each one of the grounds that have been asserted by plaintiff for why there was a fabrication by there is sufficient evidence of fabrication. And the trial court judge methodically went through each one of those explained exactly why that did not present enough evidence for a reasonable juror to conclude that there was fabrication. And it can't just be by conclusions made by, by council. It has to be evidence that reasonable jerk could rely upon. And those that he went through each one, including he talked about the no photographic evidence and similar has been discussed today. He cited a couple of cases in there about mere carelessness is insufficient that that's much different than fabrication with respect to the three independent experts. Again, each one of those experts, he cited to Murdoch. He decided that, Hey, saying that the reason you get false identifications, they didn't say the reason you get false identifications is because of fabrication. They said it could be because of the result of carelessness. It's because he didn't do enough good enough job because it's subjective. He went through the crime labs methodology. And again, found he made six or seven different findings with that and concluded why that was insufficient and did the same with the low error rate. There was nothing presented by plaintiffs to show that the times that someone could get it wrong. The reason they get it wrong is because of fabrication. There was the quarrels went into the verification. The Mr. Kalkowski didn't alone make that identification. Cage Shaw, as is true with the policy with the crime lab, made a verification after Mr. Kalkowski and prior to the arrest. And Mr. Shaw also testified to the jury and said he has no reason to change what he had concluded that it was a proper conclusion. And plaintiff tried to argue that that verification shows fabrication because Cage already knew what the conclusion was of Mr. Kalkowski. That's not evidence of fabrication. With respect to some of the issues that were raised in questioning with plaintiff's counsel, I just want to use my last couple of minutes to address that or any other questions the court has. He talked about in case bullets get misplaced, you got to take these pictures. The DPS crime lab makes their identifications based on microscope evidence. They do not make identifications based on photos. And Mr. Kalkowski testified that's why the photos are less important to them because you look on the microscope. And to the point that, oh, maybe Was there any evidence in the record as to whether or not he had used and produced photographs in other cases besides this one? I don't believe that there was, Your Honor. I don't recall there being any. He did have pictures in this case. There were pictures taken. He went over some of those with the jury. He explained to the jury why he reached his conclusions for identification. And the other important point is he showed when Lucian Haig came to the lab, plaintiff's expert, Mr. Kalkowski went to the where he had seen an identification. Mr. Haig disagreed. Well, if every time experts disagree is evidence of fabrication, then fabrication is an issue in every civil case I've ever been in. Because you always get the experts disagreeing in civil trials. Again, with respect to the harmlessness, there's nothing showing that the jury would have reached any other conclusion. It was a higher standard to try to show the fabrication. And if there are any further questions, I'm happy to answer those. Otherwise, I appreciate the court's time today. There do not appear to be any additional questions and your time is up. Thank you. Thank you. All right. Rebuttal. There was no waiver of fabrication. I was troubled by my colleague's remark that there was some sort of burden on us to prove things at the summary judgment motion. The burden at the summary judgment motion is to show that there are genuine issues of material fact that the jurors need to resolve. And in doing that, because you were on the defensive, the law gives us, at least since 1986, the Liberty Lobby cases and the related ones. They say that the trial judge, the trial court, does not weigh the evidence, does not weigh credibility, and must take all reasonable inferences in favor of the non-moving party. And here we have a reasonable inference of fabrication from all the different kinds of steps that were not taken properly. Was there any evidence that you were precluded from entering into evidence? No. And that's the point. The point is the evidence is all there. You just need to be able to explain it to the jury. I mean, when you talk about a trial, you all know this from your experience as judges and as lawyers, the whole point of a successful proper case is to tell a story that makes logical sense, that takes all the facts, all the evidence, weaves it together into a story. But since you didn't have a fabrication cause of action, what was the cause of action that you had? False arrest, false imprisonment, based in large part on fabrication, because the only reason... Do you agree that those two claims that went to the jury were governed by state law, right? Correct. Okay. And the reason that... What was the standard of proof? Counsel, what was the standard of proof required there? Was it required to show fabrication or bad faith? What is the Arizona standard for proving false arrest and false imprisonment? Lack of probable cause is the basis. And there was no probable cause because, as every expert said for the government, if we had not had this verification... But you know, Counsel, in order to prove that, you don't have to show fabrication. That would certainly aid your case. It would give you a very powerful case if you could show malicious intent on the part of Kalkowski and others. But in order to win, as you've just explained Arizona law to me, you don't have to show fabrication. You only need to show that there was no probable cause. And on that, you've already told us, you got all the evidence in and the jury found against you. So what's the problem? No. You got the point and missed it at the same time. The point is you have to show no probable cause. But you show no probable cause here by arguing to the jury, take a response from all these facts, ladies and gentlemen of the jury, that there must have been fabrication. That's the only explanation that fits all of the facts. The lack of photographic... Contemporary photographs of the striation match, the lack of proper procedures, the immediate dropping of the case as soon as the three independent experts said, well, hold on, this is inconclusive. And inconclusive, of course, is utterly incompatible with finding a match. There's two different categories of forensic evidence. So did the jury know that they dropped the case after the other experts? Did the jury know? Yes, but they didn't know why. They didn't know. Well, the only explanation that they could have had, it seems to be the one... Well, I guess what I'm struggling with is when we do jury work, we always say, arguments of counsel are not evidence. And so all of the evidence came in, the proper law came in. So whatever you call a jury, whether it's a jury or not, if you call it, they're free to decide what they think it is, whether it amounts to probable cause or not. I guess I'm just... I continue to struggle with why what you would call it as opposed to what they would think it is, what you would call it wouldn't be evidence anyway. That's not evidence of fabrication. Give no explanation. If you cannot tell the story in a rational way, the jury is going to go in a different direction. And here there was a story to tell. There was a story that tied everything together. After all, criminalist Kowalkowski always took photos. Always. This is the one time he didn't. If your theory is... If your theory before the court today is correct, then Judge Campbell was also in error on his ruling about the implications of the grand jury's finding of probable cause. You've only got... You've just got six days of damages here. And you had quite a few arguments about what kind of damages you would get over those six days, because then the jury, the grand jury, came back with an indictment. And Judge Campbell ruled that that was... That that covered it. And he excluded the State from arguing that they had... That a grand jury had found this. That was the quid pro quo here, is that the State didn't get to introduce the grand jury's indictment. But if your argument is correct, then why aren't you here challenging that argument as well, that ruling by the court? Because that would be just as wrong as everything else that you've told us here. Probably should, Your Honor. But we decided to focus on this particular point, and the fabrication point, which seems to me, and still seems to me, to be the strongest thing about this case. If you go back to that summary judgment motion, the plaintiff's argument... The plaintiff is arguing as hard as he can that there's no false arrest, no problem, no... That there's false arrest and false imprisonment, because there's no probable cause. And why is there no probable cause? Because this criminalist who always took photos of his evidence, this time didn't follow proper procedures. Now, I asked your opposing counsel what the He said that there wasn't such evidence in the record. So is he just wrong on that? Yes, there was. He took photos. That was the process. That was the standard procedure there. He followed the standard procedure. He was, of course... Photos taken of what? Pardon me, Your Honor. Of just of the bullets, or are these microscopic pictures of what you can see through the microscope? Yeah, well, you know, this isn't an electron microscope. This is a comparison microscope. Right. You might even have one in your high school lab. And all you have to do is push a button. You get it on the screen. Here it is. You compare the two striations. You click the button. Boom, you got a photograph. It's very simple. And he always did it. He didn't do it this time. There's another brick in the wall that they're trying to build here to show that there could be fabrication. Just a reasonable inference. That's all they were asking for at the trial court. At the district court, it was a reasonable inference to go to the jury so they could argue to the jury. You're right about the evidence is there. You've got everything there, and it makes no sense at all unless you say, well, here's what ties it all together. Fabrication. You know, like that quote I put in from Sir Conan Doyle. If you eliminate the impossible, whatever remains, however improbable, must be true. By the way, I saw a wonderful television program last month about forensic science and why forensic sciences get into their profession. Every single forensic scientist who was interviewed said it was because of Sherlock Holmes. Okay, well, you're over three minutes over, so I'm sorry, Your Honor. Unless either of my colleagues have any questions, your time has expired. Thank you, Your Honor. I appreciate your patience. Thank you. This matter will now stand submitted, and this court is in recess until tomorrow at nine. Thank you. Thank you. And just so you know, your client didn't show up. There wasn't anyone that came into court. Okay, thank you. We at least got to watch it on Zoom. It was a good argument. Thank you, Your Honor. I appreciate all of your work on this. Bye-bye. I appreciate your time. Thank you, Your Honor.
judges: BYBEE, CALLAHAN, COLLINS